UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **Joseph Hannigan** and **Linda Hannigan**<br><br>            Plaintiffs<br><br>v.<br><br>**Bank of America, N.A.** and **Wells Fargo Bank, N.A., as Trustee for the Certificateholders of Banc of America Mortgage Securities, Inc., Mortgage Pass-Through Certificates, Series 2004-7**<br><br>            Defendant | Civ. No. 1:13-cv-11088-NMG<br><br><br>**First Amended Complaint and Jury Demand**<br><br>**(Leave to file granted on January 7, 2014)** |

**Nature of the Case**

1.      Plaintiffs Joseph and Linda Hannigan began experiencing financial hardship when Mr. Hannigan's housing construction business slowed due to the downturn in the housing market. They reached out to Defendant Bank of America, N.A., servicer of their mortgage, to inquire into the available options to save their home, and were told to fall behind on their payments in order to obtain a loan modification. At Bank of America's direction, they ceased making payments and applied for a loan modification under the federal Home Affordable Modification Program. The Hannigans were granted a permanent loan modification agreement, which lowered their mortgage payment. They began making payments under this agreement, but Bank of America refused to honor it and instead told them to start over and submit a new application. Confused and disappointed, the Hannigans repeatedly reapplied, but instead of sending a new

modification, Bank of America misled them, made false statements, lost documentation, required resubmission of documents already provided, and ultimately initiated foreclosure. The Hannigans now file suit against Bank of America for breach of contract, negligent misrepresentation, promissory estoppel, and violation of G.L. c. 93A and add a claim against the investor who claims to own their mortgage, Wells Fargo Bank, N.A., as Trustee, for violation of G.L. c. 93A.

### Jurisdiction and Venue

2.      Jurisdiction of this Court arises under 28 U.S.C. §§ 1441(b) and 1332.

3.      Venue lies properly in this district pursuant to 28 U.S.C. §§ 1441(a) and 123(a)(3).

### Parties

4.      Plaintiffs Joseph and Linda Hannigan ("the Hannigans") are natural persons residing in Kingston, Plymouth County, Massachusetts.

5.      Defendant Bank of America, N.A. ("BOA") is a nationally charted bank with principal offices located in Charlotte, North Carolina. BOA regularly does business in Massachusetts. BOA is in the business of servicing and originating mortgage loans.

6.      Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), as Trustee for the Certificateholders of Banc of America Mortgage Securities, Inc., Mortgage Pass-Through Certificates, Series 2004-7, is a nationally chartered bank with principal offices located in San Francisco, California. Wells Fargo regularly does business in Massachusetts and is the investor who purportedly owns the Hannigans' mortgage loan on behalf of the Trust containing securitized mortgage loans.

**Background**

7.      The Hannigans own and reside in real property located at 40 Old Saw Mill Road, Kingston, MA 02364.

8.      The Hannigans acquired the property in 1997. In 2004, they refinanced their purchase and executed a mortgage in favor of BOA in the amount of $638,400.00. The mortgage is recorded in the Plymouth County Registry of Deeds at book 28289, page 334.

9.      On April 6, 2012, the mortgage was allegedly assigned to Wells Fargo. The assignment is recorded in the Plymouth County Registry of Deeds at book 41262, page 316.

10.      At all relevant times, BOA serviced the Hannigans' mortgage on behalf of itself or Wells Fargo, as Trustee. For example, BOA collected the payments, sent mortgage statements and collection correspondence, and handled loss-mitigation options such as loan modifications.

11.      Authority to service the Hannigans' mortgage was granted by Wells Fargo to BOA pursuant to a trust document called a pooling and servicing agreement. The document is publicly available through the Securities and Exchange Commission and is hereby incorporated by reference.[1] BOA, at all relevant times, acted under Wells Fargo's direction and control.

12.      BOA, because of its servicing contract with the Trust, is obligated to follow the Trustee's instructions.

---

[1]      Available at http://www.sec.gov/Archives/edgar/data/1299110/000091412104001820/ba791757-ex4.txt.

*The HAMP Loan Modification Program and Guidelines*

13.     The Home Affordable Modification Program ("HAMP") was announced in early 2009. *See* Fannie Mae Announcement 09-05R, "Reissuance of the Introduction of the Home Affordable Mortgage Program."[2] The purpose of HAMP is to help millions of families modify and restructure their mortgage loans to avoid foreclosure. *Id.*

14.     HAMP accomplishes these loan modifications using a "uniform loan modification process to provide eligible borrowers with sustainable monthly payments." *Id.* The modified mortgage payment must be an equal amount to 31% of the borrower's gross monthly income. *Id.*

15.     The modification steps are called the "waterfall," and reduce the payment, inclusive of escrow for taxes and insurance, by: (1) capitalizing the arrears, resulting in a new principal balance comprised of the total amount due; (2) reducing the interest rate as low as 2%; (3) extending the term to a maximum of 40 years; and (4) providing a principal forbearance, *i.e.*, making it so that the borrower does not have to pay interest on a portion of the principal balance. *Id.* at 10-11.

16.     If, by performing these steps, the borrower's monthly mortgage payment can be reduced to 31% of his or her gross monthly income, the borrower is eligible for a loan modification. *Id.*

17.     HAMP also requires that mortgagees and servicers administer the loan modification process in a way that complies with consumer protection laws, and requires compliance with laws prohibiting unfair and deceptive business practices. *Id.* at 25.

---

[2]     Available at https://www.fanniemae.com/sf/guides/ssg/annltrs/pdf/2009/0905.pdf.

18.     HAMP reduces the monthly mortgage payments of borrowers in accordance with set guidelines promulgated by Fannie Mae and the U.S. Department of the Treasury. HAMP is part of the Troubled Asset Relief Program, under which banks such as U.S. Bank and BOA have received billions of taxpayer dollars.

19.     Both BOA and Wells Fargo participate in the HAMP program, and each executed a Servicer Participation Agreement with Federal National Mortgage Association, as financial agent of the United States. These contracts are incorporated by reference and are publicly available through the website for the U.S. Department of the Treasury.

*The Hannigans' Experience*

20.     The Hannigans attempted to contact BOA in the beginning of 2008 to inquire about possible modification, because they anticipated their financial hardship may cause difficulty making their payments.

21.     However, they were told by BOA that they could not modify their mortgage loan until they actually fell behind, although this was false.

22.     The Hannigans had exhausted their financial resources, so they complied with BOA's instructions and ceased making payments in the beginning of 2009 in order to be eligible for a modification.

23.     In the spring of 2009, the Hannigans again contacted BOA to try and obtain a loan modification, and they submitted an application in April 2009.

24.     On June 10, 2009, the Hannigans received a letter from BOA stating "[t]his letter constitutes our offer to modify [your] Mortgage … subject to the terms and

conditions [of this] agreement." It also went on to say, "When signed by you, this letter will also constitute your acceptance and agreement to these terms and conditions." (**Exhibit 1**).

25.     The offer to modify their loan came complete with specific terms: a reduction in interest rate to 4.5%, an effective date of September 1, 2009, a new principal balance of $614,572.08, a maturity date of August 1, 2049, and a new monthly payment amount of $3,502.80.

26.     The agreement also included a provision that required a payment of $7,000.00 be made within seven days of the letter. Mr. Hannigan, knowing he would not be able to pay that amount up front, called BOA to find out how to meet this obligation. He was told by a BOA representative that he could fulfill the payment requirement by making the modified payment for the next three months under a forbearance agreement, and not to worry because the modification agreement would take effect after they made those three payments.

27.     The Hannigans then made these monthly payments as instructed.

28.     The Hannigans made several attempts to get copies of the modification agreement.

29.     However, the Hannigans were told that servicing had been moved from New York to California, and their modification agreement could not be located in the system.

30.     Even after the Hannigans provided the name of the representative who had helped them set up the modification previously, they were told that there were no notes in the system regarding a modification agreement at all.

31.     On November 20, 2009, the Hannigans were sent a Notice of Intent to Foreclose despite the modification agreement that had been agreed to.

32.     The Notice specified that their loan was in default, they were at risk of losing their family home, and they must send a payment of $32,644.77 in order to cure the default by December 20, 2009.

33.     The Hannigans had been under the impression that their loan had been modified, and had been making payments under that agreement.

34.     When the Hannigans called BOA to inquire as to what was going on, BOA representatives refused to provide any answers as to the status of the modification.

35.     On December 28, 2009, BOA sent the Hannigans another modification agreement (**Exhibit 2**).

36.     This modification agreement did not bear any resemblance to the original loan modification agreement that BOA contracted to perform in June 2009.

37.     Specifically, the new modified monthly payment in this agreement was $4,768.86, over $1,200.00 more than the payment from the June 2009 agreement.

38.     Under the Hannigans' original mortgage, the payment amount was $4,706.00.

39.     The Hannigans then contacted BOA to notify them that this was not the modification they had agreed to and to find out why the terms of the modification had

changed. BOA assured them that they would review the account and find out why the modification terms had changed. The Hannigans were also told they would be notified when the errors had been resolved.

40.     After a few weeks, the Hannigans inquired as to the status of the modification and were told the account would still be corrected to reflect the original modification agreement. BOA never corrected the account.

41.     Instead on April 21, 2010, the Hannigans received another invitation from BOA to apply for a modification for their loan. The Hannigans obliged and submitted another application to BOA, complete with all requested documentation.

42.     Although they had already submitted all the requested documents to BOA in April, on September 21, 2010, they received another request to send in additional copies of the same documentation, and they complied with the request.

43.     On October 27, 2010, they received a letter from BOA to acknowledge their application for a modification had been received and to inform them that they were accepted into the modification program.

44.     In a letter dated November 17, 2010, BOA indicated that they were denied for a modification. The reason given was "Investor Guarantor Not Participating," and that their loan was not eligible under HAMP guidelines because the holder of their second mortgage, Wells Fargo, did not agree to subordinate their junior lien. This was a clear misstatement of the HAMP regulations.

45.     The MHA Handbook specifically addressed this issue under Ch. II § 1.1 stating, "HAMP does not require extinguishment of subordinate lien instruments as a

condition of modification."[3] A modification would also not cause the primary mortgage

loan to become subordinate to any junior lien.

46.     Although it was not required under HAMP, the Hannigans still

immediately sought to correct any problem related to a second mortgage. They contacted

Wells Fargo and secured a release of the subordinate lien.

47.     On November 21, 2010, the Hannigans spoke with a representative from

BOA who asked them to submit income documentation a third time to "continue the

modification process." They complied with the request and were reassured that their

loan was still under review for a modification.

48.     Again, on January 7, 2011, the Hannigans were contacted by BOA with

another request to submit documents, and again they willingly complied with the request,

via email (as requested) to BOA on January 8, 2011.

49.     The Hannigans received another letter in the mail dated January 10, 2011.

The letter informed them that BOA was missing documents, and they needed to submit

the same documents for a fifth time. The Hannigans then called BOA to confirm what

documents were needed and how they should submit them. They were assured in that

phone call that BOA had all the requested documents and did not actually need any more

documents at that time. However, to be sure, the Hannigans sent the documents

requested by fax and through FedEx.

50.     On January 17, 2011, the Hannigans called BOA to check the status of their

application. The representative stated that BOA required the same documents to be sent

---

[3]     MHA Handbook v2.0, ch. II § 1.1, available at https://www.hmpadmin.com/portal/
programs/docs/hamp_servicer/mhahandbook_20.pdf.

now a sixth time. The Hannigans again submitted the entire set of application documents to be sure nothing was left out.

51.     In a letter dated February 11, 2011, BOA informed the Hannigans that it could not process their application for a HAMP modification because BOA was missing the required documents and could not complete the review until these documents were received.

52.     On February 18, 2011, the Hannigans submitted the requested documents for a seventh time, also including a letter to BOA informing the bank once again that they had repeatedly submitted the requested documents and they should already be in possession of these documents.

53.     The Hannigans received the exact same request for missing documents in a letter dated March 23, 2011.

54.     The Hannigans complied with the request and sent in the required documentation, for an eighth time.

55.     Although they complied with the requests time and time again, BOA informed the Hannigans that it cancelled the modification application on March 29, 2011, because of missing documents. In fact, all of the requested documents had been submitted multiple times.

56.     In a letter dated April 8, 2011, after all the repeated requests for documents and the Hannigans making every effort to comply with every request made by BOA, BOA falsely informed the Hannigans that they were not eligible for a modification at that time.

57.     The Hannigans immediately called BOA and asked what they needed to do at that point. They were asked to send over more of the same documents and then told the account would still be under review.

58.     Because BOA had not rendered a decision on the application, the Hannigans called BOA, on September 8, 2011, to check on the status of the modification. They spoke to a representative that told them a decision should have been made by then, and that she would elevate the application to "escalated status."

59.     After months of phone calls every week or so to BOA asking about the status of the modification application and being told that it was still under review, the Hannigans again called to check the status of their application on March 12, 2012. This time, however, they were then told that the modification had been denied on September 15, 2011.

60.     The representative told the Hannigans the reason for the denial was because Wells Fargo, as the holder of a second mortgage, was not participating.

61.     The Hannigans informed the representative that Wells Fargo no longer held a second mortgage on the property. However, instead of correcting the error, the representative told the Hannigans they had to reapply for a modification a third time.

62.     Again, the Hannigans complied with the request and submitted another application.

63.     However, even though the Hannigans were again under review for a modification, they received a validation of rights notice from the law firm of Stanton &

Davis on April 17, 2012, informing them once again that BOA was initiating foreclosure proceedings against the Hannigans.

64.     On May 25, 2012, the Hannigans, with the assistance of counsel, submitted another application for modification of their mortgage loan.

65.     When BOA refused to verify receipt of the application, the entire application was resubmitted again on May 31, 2012, and a third time on June 6, 2012.

66.     The Hannigans continued to check in on the status of the modification application, but were only told that it continued to be under review.

67.     In a letter dated August 30, 2012, BOA stated that "[a]s of the date of this letter, we cannot complete our review because some information we need is missing or incomplete." The documents BOA claimed were missing in this letter, tax returns, pay stubs, self-employment income documentation, bank statements, verification of occupancy (utility bill), and homeowners association documentation, had already been submitted to BOA three times for this application alone.

68.     In a letter dated September 17, 2012, BOA informed the Hannigans that their loan was not eligible for a modification because, "you did not provide us with the documents we requested."

69.     On September 18, 2012, BOA sent a letter to the Hannigans once again falsely stating that their loan was not eligible for modification. This time, BOA stated that their inability to actually review their application for modification was because, "we service your loan on behalf of an investor or group of investors that has not given us the contractual authority to modify your loan."

70.     BOA had safe harbor from any liability to investors for providing loan modifications under the Helping Families Save Their Homes Act of 2009.[4]

71.     Under the Servicer Participation Agreement for HAMP, BOA was obligated to request that any non-participating investor participate in HAMP. Specifically, the HAMP guidelines state: "Within 30 days of identifying an investor as a non-participant, the servicer must contact the investor in writing at least once, encouraging the investor to permit modifications under HAMP."[5]

72.     The Hannigans requested proof from BOA that it has contacted the investor, Wells Fargo as Trustee, to request permission to modify their loan under HAMP, as required under HAMP guidelines.  The Hannigans first requested this information by counsel, via telephone on a number of occasions in May and June of 2012, as well as in written correspondence on August 16, 2012 and December 9, 2013.

73.     Defendants have repeatedly refused to provide this information, and BOA has been unable to show that it has complied with this requirement to contact Wells Fargo to seek permission to modify the Hannigans' loan under HAMP.

74.     To date, the Hannigans still have not received the permanent loan modification they were promised.

75.     The Hannigans have complied in all material respects with what was asked of them by BOA, but BOA broke its promises to them.

---

[4]     15 U.S.C. § 1639a.

[5]     MHA Handbook v4.0, § 1.3, available at https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/mhahandbook_40.pdf.

76.     The Hannigans have been trying repeatedly to get Defendants to provide them with the loan modification to which they are entitled, and to which they were entitled in June 2009. Despite their best efforts, they have been ignored, had promises to them broken, and been lied to about the status of their loan.

77.     BOA has engaged in other unfair and deceptive conduct with regard to the Hannigans, including:

a.   breaching the original contract that the parties had with respect to the first permanent loan modification agreement;

b.   stating that they were not entitled to the permanent modification, when in fact they were;

c.   requiring them to make monthly trial payments beyond the three-month period that was agreed to;

d.   asking them to repeatedly submit financial documentation that they had already submitted;

e.   falsely and deceptively stating that they did not qualify for a permanent loan modification;

f.   continuing to provide contradictory, confusing, and misleading information about the status of their loan;

g.   pursuing unauthorized foreclosure against them; and

h.   causing severe emotional stress due to the failure of BOA to modify their loan as promised and continuing to send harassing foreclosure notices.

78.     This situation could have easily been avoided had BOA simply honored the original loan modification contract or even reviewed the Hannigans' multiple applications for a loan modification in good faith.

79.     Wells Fargo has engaged in other unfair and deceptive conduct with regard to the Hannigans, including:

    a.   failing to grant BOA contractual authority to modify the loan;

    b.   stating that they were not entitled to the permanent modification, when in fact they were;

    c.   falsely and deceptively stating that they did not qualify for a permanent loan modification; and

    d.   continuing to provide contradictory, confusing, and misleading information about the status of their loan.

80.     At all times pertinent hereto, Defendants were acting by and through their agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under Defendants' direct supervision and control.

81.     At all times pertinent hereto, Defendants' conduct, as well as that of its agents, servants, and/or employees, was intentional, willful, reckless and in negligent disregard for state laws and the Hannigans' rights.

82.     Defendants' actions have caused huge mortgage arrearages to occur on the Hannigans' account, damaged their credit which resulted in the closure of Mr. Hannigan's mortgage brokerage business and the surrender of his mortgage license to the Massachusetts Division of Banks for his failure to qualify for bonding, caused the

imminent loss of their family home to an unnecessary foreclosure, assessed needless fees to their account, caused them to incur legal costs and fees in their attempt to get Defendants to keep their promises to them, and deprived them of other economic benefits to which they were entitled under HAMP.

83.   On December 28, 2012, the Hannigans sent BOA a demand for settlement pursuant to the Massachusetts Consumer Protection Act, G.L. c. 93A ("Chapter 93A"). (**Exhibit 3**). BOA failed to make a reasonable offer of settlement in response.

84.   On December 5, 2013, the Hannigans sent Wells Fargo a demand for settlement pursuant to Chapter 93A (**Exhibit 4**). Wells Fargo failed to make a reasonable settlement offer in response.

**Count I:**
**Breach of Contract**
(Bank of America)

85.   The preceding paragraphs are incorporated by reference.

86.   The Hannigans have a loan modification agreement with BOA that is supported by valid consideration and an exchange of agreed promises.

87.   After sending the Hannigans that agreement, BOA promised the Hannigans they could substantially comply with the terms of the agreement by beginning to make monthly mortgage payments.

88.   BOA should have reasonably expected that promise would induce action or forbearance by the Hannigans.

89.   BOA's promise induced action by the Hannigans, and they began making monthly payments under the agreement.

90.     The Hannigans have performed their promises under the loan modification agreement in all material respects.

91.     BOA breached the contract by failing to honor it.

92.     BOA has initiated foreclosure of the Hannigans' home.

93.     Injustice can only be avoided by enforcing the promise and permanently modifying the Hannigans' mortgage loan.

94.     BOA is liable to the Hannigans for breach of contract, or in the alternative, for enforcement by virtue of action in reliance. *See* Rest. (2d) of Contracts, § 139.

95.     The Hannigans were damaged as a result of this breach, as stated above.

**Count II:**
**Negligent Misrepresentation**
(Bank of America)

96.     The preceding paragraphs are incorporated by reference.

97.     A BOA representative told the Hannigans in June 2009, that they could satisfy the required $7,000.00 payment under their loan modification agreement by making three monthly payments in the amount of $3,502.80, the modified monthly payment, until the modification went into effect on September 1, 2009.

98.     BOA knew or should reasonably have known that this statement was false. BOA did not intend to provide the loan modification. Rather, BOA denied the Hannigans' attempts to enforce the modification agreement, instead initiating foreclosure, sending them a different, less favorable modification agreement, and making them submit other new applications for a loan modification.

99.    The Hannigans relied on BOA's statement. Their reliance was reasonable considering that BOA was the servicer of their mortgage loan and was engaged in the business of modifying mortgage loans.

100.    The Hannigans relied to their detriment because they forewent other options to save their home.

101.    Instead of providing the modification agreement that the Hannigans secured in June 2009, BOA instructed the Hannigans to begin several new applications for a loan modification. BOA made countless promises that it intended to review the Hannigans' account and reassured the Hannigans that their account was under review.

102.    The Hannigans relied on these promises, as well, and went ahead with the applications to modify their mortgage loan.

103.    BOA never followed through on its promises. It did not make any effort to modify the Hannigans' mortgage loan in good faith.

104.    BOA made false representations in its reasoning for denying the Hannigans' applications for modification, and instead, BOA continued to proceed with foreclosure on the Hannigans' home.

105.    The Hannigans were damaged as a result of Defendant's conduct, as stated above.

### Count III:
### Promissory Estoppel
(Bank of America)

106.    The preceding paragraphs are incorporated by reference.

107.    BOA made promises in the loan modification agreement of June 2009 that it expected to induce action on the part of the Hannigans. Specifically, BOA intended for

the Hannigans to make monthly payments to BOA which would benefit it, and to sign the loan modification agreement.

108.    BOA's promises induced the Hannigans to make payments to it and to sign the loan modification agreement.

109.    The Hannigans made the payments to BOA relying on its promises in the loan modification agreement.

110.    It was reasonable for the Hannigans to rely on BOA's representations since the agreement appeared to be legal document outlining the terms of a loan modification that was specifically sent to them in response to their application for a loan modification and three months of payments would total approximately $10,508.40 which Plaintiffs expected to cover the $7,000 down-payment.

111.    The Hannigans were damaged as a result of Defendant's conduct, as stated above.

**Count IV:**
**Consumer Protection Act G.L. c. 93A**
(Bank of America)

112.    The preceding paragraphs are incorporated by reference.

113.    BOA is engaged in commerce in Massachusetts by, among other things, servicing residential mortgages.

114.    The Hannigans are not entitled to bring an action under M.G.L. c. 93A, § 11.

115.     BOA engaged in unfair or deceptive acts or practices with respect to the Hannigans in violation of the Massachusetts Consumer Protection Act with respect to the Hannigans as described throughout this First Amended Complaint.

116.     The Hannigans mailed a written demand letter pursuant to BOA on December 28, 2012 reasonably describing the unfair or deceptive acts or practices, as well as the injury suffered, pursuant to the Massachusetts Consumer Protection Act, M.G.L. c. 93A, § 9, asking for compliance with its duties, a permanent loan modification agreement, and a reasonable offer of settlement. (**Exhibit 3**).

117.     BOA failed to make a reasonable settlement offer in response.

118.     BOA's actions constitute unfair and deceptive trade practices in violation of M.G.L. c. 93A.

119.     The Hannigans have been damaged by BOA's actions, including but not limited to: losing the economic benefit of a loan modification, the large arrearage on their account, damage to their credit, the threat of imminent loss of their family home in an unnecessary foreclosure, assessed needless fees to their account, and caused them to incur legal costs and fees in their attempt to get BOA to keep its promises to them.

**Count V:**
**Consumer Protection Act, G.L. c. 93A**
(Wells Fargo)

120.     The preceding paragraphs are incorporated by reference.

121.     Wells Fargo is engaged in commerce in Massachusetts by, among other things, acting as Trustee for mortgage securities trusts that own home mortgage loans.

122.    The Hannigans are not entitled to bring an action under M.G.L. c. 93A, §

11.

123.    Wells Fargo engaged in unfair or deceptive acts or practices with respect

to the Hannigans in violation of the Massachusetts Consumer Protection Act with respect

to the Hannigans as described throughout this First Amended Complaint.

124.    The Hannigans mailed a written demand letter pursuant to Wells Fargo on

December 5, 2013 reasonably describing the unfair or deceptive acts or practices, as well

as the injury suffered, pursuant to the Massachusetts Consumer Protection Act, M.G.L.

c. 93A, § 9, asking for compliance with its duties, a permanent loan modification

agreement, and a reasonable offer of settlement. (**Exhibit 4**).

125.    Wells Fargo failed to make a reasonable settlement offer in response.

126.    Wells Fargo's actions constitute unfair and deceptive trade practices in

violation of M.G.L. c. 93A.

127.    The Hannigans have been damaged by Wells Fargo's actions, including

but not limited to losing the economic benefit of a loan modification, the large arrearage

on their account, damage to their credit, the threat of imminent loss of their family home

in an unnecessary foreclosure, assessed needless fees to their account, and caused them to

incur legal costs and fees in their attempt to obtain a permanent modification of their

mortgage loan.

**Request for Relief**

WHEREFORE, Plaintiffs request judgment in their favor and against Defendants, as well as the following relief:

a)  A declaratory judgment that Defendant Bank of America, N.A. breached the Loan Modification contract with the Hannigans;

b)  An order that Defendants specifically perform their obligations under the Loan Modification contract and provide the Hannigans with a permanent loan modification;

c)  Actual and compensatory damages;

d)  Statutory damages under all applicable statutes;

e)  Costs, attorney fees, and interest; and

f)  All other relief that they may be entitled to at law or in equity.

**Jury Demand**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted,

/s/ *Danielle M. Spang*
Josef C. Culik (BBO #672665)
Danielle M. Spang (BBO #684365)
CULIK LAW PC
18 Commerce Way, Suite 2850
Woburn, Massachusetts 01801
Tel (617) 830-1795
Fax (617) 830-1576
jculik@culiklaw.com
dspang@culiklaw.com

Attorneys for Plaintiffs
Joseph and Linda Hannigan

January 7, 2014

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 7, 2014.

/s/ *Danielle M. Spang*
Danielle M. Spang