United States District Court
District of Massachusetts

|  |  |
|---|---|
| JOSEPH HANNIGAN and LINDA HANNIGAN, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. ) 13-11088-NMG ) |
| BANK OF AMERICA, N.A. and WELLS FARGO BANK, N.A., as Trustee for the Certificateholders of Banc of America Mortgage Securities, Inc., Mortgage Pass-Through Certificates, Series 2004-7 | ) ) ) ) ) ) |
| Defendants. | ) ) ) |

**MEMORANDUM & ORDER**

**GORTON, J.**

This case involves the repeated efforts over the course of several years by plaintiffs Joseph and Linda Hannigan ("plaintiffs") to obtain a loan modification under the Home Affordable Modification Program ("HAMP") from the loan servicer, Bank of America, N.A. ("Bank of America"), and the trustee of the note, Wells Fargo Bank, N.A. ("Wells Fargo") (collectively, "defendants").

Having been repeatedly stymied in their loan modification applications, plaintiffs filed suit for breach of contract, negligent misrepresentation, promissory estoppel and unfair

-1-

trade practices under M.G.L. c. 93A. Pending before the Court is defendants' motion to dismiss plaintiffs' amended complaint.

I. **Factual Background and Procedural History**

   A. **Facts**

The Court recites the facts as alleged in plaintiffs' amended complaint of January 7, 2014.

In May, 2004, plaintiffs refinanced an existing mortgage by obtaining a loan of $638,400 ("the loan") secured by a mortgage ("the mortgage") on residential property in Kingston, Massachusetts. In July, 2004, the mortgage was securitized into a trust pursuant to a "Pooling and Servicing Agreement." Under that agreement, Bank of America serviced the loan and Wells Fargo became the trustee.

In 2009, the plaintiffs stopped making payments and submitted an application for a loan modification. In June of that year, Bank of America offered plaintiffs a modification, according to which they were required (1) to submit monthly payments of $3,502 starting on September 1, 2009 and (2) to make a one-time, upfront payment of $7,000 within seven days. The loan's new principal balance was to be $614,572.

Plaintiffs were unable to make the $7,000 payment and sought alternate arrangements to fulfill that obligation. They were told by a Bank of America representative that the $7,000 payment could be made over the following three months under a

forbearance agreement and that they would remain eligible for the modification. Bank of America admits that it allowed plaintiffs to make reduced payments for three months based on the forbearance agreement but disputes that that agreement waived the requirement to make the $7,000 payment. It is undisputed, however, that plaintiffs made three reduced monthly payments and that Bank of America did not modify the loan.

In November, 2009, Bank of America sent plaintiffs a notice of foreclosure but, the following month, sent them a second loan modification offer, according to which they were to make monthly payments of $3,907 and the new principal balance of the loan was to be $621,864. Plaintiffs rejected that offer, believing it to be a mistake.

In April, 2010, Bank of America invited plaintiffs to apply for another modification. After receiving plaintiffs' application, in September, 2010 Bank of America requested additional documentation. The following month, Bank of America sent plaintiff a letter acknowledging receipt of their application but subsequently denied it. The stated ground was that

> the lender(s) on your junior lien mortgage(s)... did
> not agree to keep its lien in a junior position to our
> modified lien.

From November, 2010 to March, 2011, plaintiffs submitted additional documentation to Bank of America but the bank responded that they were ineligible for a loan modification.

In May and June, 2012, plaintiffs, after retaining counsel, applied again for a modification. Those applications were denied. Plaintiffs then submitted four subsequent modification applications between September, 2012 and November, 2013, all of which were denied by Bank of America because they were incomplete or because the actual holder of the note, Wells Fargo, had not given it "contractual authority to modify [plaintiffs'] loan."

Plaintiffs claim that defendants' actions have caused them severe financial harm, including "huge" mortgage arrearages and significant damage to their credit. They also note that defendants' actions have "caused the imminent loss of their family home to an unnecessary foreclosure," though the record is unclear as to the current status of plaintiffs' residence.

**B. Procedural History**

In December, 2012, plaintiffs sent Bank of America a demand letter under M.G.L. c. 93A. Bank of America did not respond to that letter with a reasonable offer of settlement.

Plaintiffs filed a complaint against Bank of America in the Massachusetts Superior Court for Plymouth County in March, 2013, which defendants removed to this Court in May, 2013. The

-4-

complaint includes four counts against Bank of America: breach of contract (Count I), negligent misrepresentation (Count II), promissory estoppel (Count III) and unfair or deceptive trade practices under Chapter 93A (Count IV).

The Court held a scheduling conference in December, 2013, after which plaintiffs moved for leave to file an amended complaint to add a claim under Chapter 93A against Wells Fargo. The Court allowed that motion and plaintiffs filed the amended complaint in January, 2014.

Plaintiffs submitted a second demand letter under Chapter 93A in December, 2013, in response to which Bank of America again failed to make a reasonable offer of settlement.

In late January, 2014, both defendants moved to dismiss the case for failure to state a claim upon which relief can be granted.

## II. Defendants' Motion to Dismiss

The crux of plaintiffs' complaint is that Bank of America engaged in a "pattern and practice of stringing [them] along." According to their complaint, despite repeatedly offering loan modifications and even confirming new loan provisions, Bank of America ultimately denied plaintiffs' numerous applications for loan modification. Moreover, defendants purportedly did so after constantly shifting their rationale for their denials and refusing to follow the procedures required by HAMP.

Defendants respond that they simply followed their own explicit procedures with which plaintiffs did not comply and therefore no loan modification was warranted and no new contract was formed.

**A.  Legal Standard**

To survive a 12(b)(6) motion to dismiss, a pleading must contain a claim to relief that is "plausible," not just a "sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 570).  A district court assesses a complaint's sufficiency in two steps. Manning v. Boston Medical Ctr. Corp., 725 F.3d 34, 43 (1st Cir. 2013).  First, a court ignores conclusory allegations mirroring legal standards. Id.  Second, it accepts the remaining factual allegations as true and draws all reasonable inferences in the plaintiff's favor, thereafter deciding if the plaintiff would be entitled to relief. Id.  A court may also consider documents attached to or incorporated in the complaint and other undisputed documents. Wilborn v. Walsh, 584 F. Supp. 2d 384, 386 (D. Mass. 2008).

**B.  Application**

    **1.  Breach of Contract against Bank of America (Count I)**

To succeed on a breach of contract action, plaintiff must prove (1) an offer, (2) an acceptance, (3) consideration, (4) breach and (5) damages. Canney v. New England Tel. & Tel. Co.,

228 N.E.2d 723, 728 (Mass. 1967). Consideration requires imposing a legal detriment on the promisee and legal benefit on the promisor. Ekchian v. Thermo Power Corp., N. 00-P-1826, 2002 WL 31856404, at *3 n.8 (Mass. App. Ct. 2002).

Here, the Court finds that plaintiffs cannot plausibly allege the existence of any valid breaches of contract by Bank of America. Plaintiffs' primary complaint is that Bank of America repeatedly promised that they would be eligible to receive a loan modification under HAMP. The Court is unconvinced, even assuming the veracity of the allegations in the complaint, that those "promises" created any enforceable contracts under Massachusetts law because plaintiffs did not appropriately accept any of Bank of America's offers.

The June, 2009 "agreement" that plaintiffs reiterate in their complaint is actually a loan modification offer from Bank of America that includes an explicit condition precedent, namely the payment of $7,000 to be made within seven days. Although the language might not be clear, unfortunately for plaintiffs, the law is.

Accordingly, the Court will allow defendants' motion to dismiss Count I.

### 2. Negligent Misrepresentation against Bank of America (Count II)

To prevail on a claim of negligent misrepresentation, plaintiffs must establish that defendants

> (1) in the course of [their] business, (2) supplied false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance on the information, and that he (6) failed to exercise reasonable care or competence in obtaining or communicating the information.

Braunstein v. McCabe, 571 F.3d 108, 126 (1st Cir. 2009 (citation omitted).

The alleged misrepresentation in this case is that plaintiffs did not need to make the $7,000 up-front payment in order to be eligible for the June, 2009 loan modification. Here, plaintiffs' complaint clearly alleges that the alleged misrepresentation (1) occurred during a business transaction, (2) was false, (3) guided plaintiffs in their business transactions, and induced their reliance on the promise allegedly made to them by a Bank of America representative who failed to exercise reasonable care.

Bank of America responds that plaintiffs did not suffer any pecuniary harm because they only made the payments that they otherwise were contractually obligated to make. In other words, Bank of America contends that plaintiffs have not alleged that they lost "money (or items money could acquire)." Kiluk v.

Select Portfolio Servicing, Inc., 2011 WL 8844639, at *5 (D. Mass. Dec. 19, 2011).

In this case, however, plaintiffs allege a variety of pecuniary damages. Those damages are, admittedly, indirect but they are damages nonetheless, including money spent in ways in which plaintiffs would not have otherwise spent it had they known they would not obtain a loan modification. See id. (noting that "the pecuniary loss requirement might be met if the plaintiff ... suffered other harms – such as incurring increased fees, losing opportunities to pursue refinancing, or forgoing other opportunities to avoid foreclosure"). Indeed, plaintiffs explicitly claim that they "forewent other options to save their home." Accordingly, plaintiffs' complaint, taken as true at this juncture in the litigation, plausibly alleges a claim of negligent misrepresentation and the Court will deny defendants' motion to dismiss Count II.

### 3. Promissory Estoppel against Bank of America (Count III)

Promissory estoppel is generally asserted as an "alternative theory of recovery for a contract that is not supported by consideration." Nickerson-Reti v. Bank of America, N.A., 2014 WL 2945198, at *10 (D. Mass. June 26, 2014). To prevail on their claim of promissory estoppel, plaintiffs must establish that Bank of America made an unambiguous promise to

modify the mortgage and that they reasonably relied upon that promise. See R.I. Hosp. Trust Nat'l Bank v. Varadian, 647 N.E.2d 1174, 1179 (Mass. 1995).

Where a promise is less than explicit, Massachusetts courts have

> applied the doctrine of promissory estoppel [where] there has been a pattern of conduct by one side which had dangled the other side on a string.

Dixon v. Wells Fargo Bank, N.A., 798 F. Supp. 2d 336, 344 (D. Mass. 2011) (citation omitted).

Here, plaintiffs have alleged that a Bank of America representative made them a promise and that they reasonably relied on that promise. Specifically, plaintiffs claim that they were told that they need not make a $7,000 payment in order to secure a loan modification. While that fact is disputed by Bank of America, at this juncture the Court accepts that allegation as true. Indeed, the Court notes that the First Circuit has cited with approval a district court's denial of a motion to dismiss a claim of negligent misrepresentation in a mortgage modification lawsuit where plaintiffs

> alleged both a specific promise and a legal detriment that ... was a direct consequence of their reliance on [that] promise.

MacKenzie v. Flagstar Bank, FSB, 738 F.3d 486, 497 (1st Cir. 2013) (citing Dixon, 798 F. Supp. 2d at 343).

-10-

Accordingly, the Court will deny defendants' motion to dismiss Count III.

### 4. Unfair or Deceptive Trade Practices under Ch. 93A against Bank of America (Count IV)

#### a. Legal Standard

Chapter 93A protects consumers from unfair competition and unfair or deceptive acts or practices. M.G.L. c. 93A, § 11. Plaintiffs must also prove they suffered a tangible loss as a result of the unfair or deceptive conduct. Arthur D. Little, Inc. v. Dooyang Corp., 147 F.3d 47, 56 (1st Cir. 1998).[1]

To determine whether a particular practice is unfair, courts examine

> Whether the practice ... is within at least the penumbra of some common-law, statutory or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers....

Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 69 (1st Cir. 2009). As Massachusetts lawyers know well, the lodestone of Chapter 93A claims is whether the defendant's actions "would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." Levings v. Forbes & Wallace, Inc., 8 Mass. App. Ct. 498, 504 (1979).

---

[1] Because of its previous finding with respect to pecuniary loss in Count II, the Court also finds that plaintiffs have sufficiently alleged a loss in Count IV.

-11-

Although claims under Chapter 93A are often included in addition to other statutory and common law violations, "[v]iolation of a statutory regime is not a necessary basis" for them to proceed. Morris v. BAC Home Loans Servicing, L.P., 775 F. Supp. 2d 255, 259 (D. Mass. 2011); see also Mass. Eye & Ear Infirmary, 552 F.3d at 66 ("To prove [a Chapter 93A] claim, it is neither necessary nor sufficient that a particular act or practice violate common or statutory law.").

Courts have held that "violations of HAMP can provide the basis for recovery under Chapter 93A." Morris, 775 F. Supp. 2d at 262. Of course, "not every technical violation of HAMP should expose a servicer to Chapter 93A liability," id. at 263, only those situations where the defendant's actions were unfair or deceptive. Id. (noting that it would be sufficient at the motion-to-dismiss stage to allege that a mortgage servicer "unfairly disregarded and mishandled plaintiffs' HAMP application").

Moreover, a Chapter 93A claim can survive even after a plaintiff's breach of contract and negligence claims have been dismissed. NASCO, Inc. v. Public Storage, Inc., 127 F.3d 148, 152 (1st Cir. 1997) ("A party is not exonerated from chapter 93A liability because there has been no breach of contract.") But see Madan v. Royal Indemnity Co., 26 Mass. App. Ct. 756 (1989). Of course, as this Court has held previously, a Chapter 93A

claim cannot survive if "it is based entirely on [a] discredited claim," Guillaume v. Wells Fargo Home Mortg. Corp., 2014 WL 2434650, at *4 (D. Mass. May 30, 2014) (emphasis added), but it may if the conduct in the dismissed claim comprised only part of the allegedly unfair conduct.

### b. Application

Here, the Court finds that plaintiffs have alleged a plausible violation of Chapter 93A. While plaintiffs' claims are not paragons of detail, they are more than "conclusory." The complaint alleges that plaintiffs applied numerous times for a modification under HAMP and that Bank of America repeatedly required that they re-submit information that they had previously provided.

Defendants downplay the allegations by noting that "[n]one of these alleged acts amounts to a Chapter 93A violation" but the relevant conduct is the entirety of defendants' actions, not each action viewed in isolation. Courts, however,

> have found that when defendants misrepresented to plaintiffs the status of their HAMP application, their rights under HAMP, or their eligibility for a permanent loan modification, these acts were sufficiently unfair or deceptive to impose [Chapter] 93A liability."

Stagikas v. Saxon Mortg. Serv., Inc., 2013 WL 5373275, at *4 (D. Mass. Sept. 24, 2013).

While the facts in this case are hotly disputed, the Court must accept the non-conclusory allegations contained in the complaint. Accepted as true at the present juncture, plaintiffs' allegations that they were unfairly strung along over the course of several years is sufficient to raise a plausible claim that defendants "unfairly disregarded and mishandled [their] HAMP application[s]." See Morris, 775 F. Supp. 2d at 262. In other words, if true, defendants' treatment would certainly cause one knowledgeable of the mortgage modification arena to raise an eyebrow. See Mass. Sch. of Law at Andover, Inc., 142 F.3d at 41-42. Accordingly, the Court will deny defendants' motion to dismiss Count IV.

### 5. Unfair or Deceptive Trade Practices under Ch. 93A against Wells Fargo (Count V)

Plaintiffs' final claim is that Wells Fargo, despite only serving as the trustee (functionally, the owner of the note), engaged in unfair or deceptive trade practices under Chapter 93A. Defendants counter that Wells Fargo had no contact with plaintiffs and therefore cannot be held liable under Chapter 93A.

Here, it is unclear precisely what, if anything, Wells Fargo did to plaintiffs, let alone actions that were unfair or deceptive. The most damning action noted in the complaint is simply that Bank of America "acted under Wells Fargo's direction

and control." Indeed, the complaint later explicitly states that, upon being contacted by plaintiffs, Wells Fargo granted plaintiffs "a release of the subordinate lien." In that instance, plaintiffs got what they asked for.

Defendants correctly note that "a party may not be held liable under G.L. c. 93A for conduct that it did not commit." Powell v. Ocwen Loan Servicing, LLC, No. 2010-2069, 2012 WL 345665, at *4 (Mass. Super. Ct. Jan. 4, 2012). Here, even after accepting the non-conclusory allegations against Wells Fargo as true, it did not commit any acts plausibly characterized as unfair or deceptive. Accordingly, the Court will allow defendants' motion to dismiss Count V.

**ORDER**

For the foregoing reasons, defendants' motion to dismiss (Docket No. 36) is, with respect to Counts I and V, **ALLOWED**, and is, with respect to Counts II, III and IV, **DENIED**.
**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated September 24, 2014